**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

**CAROLYN WHITE,**

      **Plaintiff,**

**v.**                           **Case No. _____**

                                         **JURY DEMANDED**

**IBERIABANK,**
*A Louisiana corporation,*

      **Defendant.**

---

**VERIFIED COMPLAINT FOR DAMAGES**

---

COMES NOW, Plaintiff Carolyn White (hereinafter, "Plaintiff" and/or "Ms. White"), by and through counsel, and for her Complaint against Defendant IBERIABANK (hereinafter, "Defendant" or "Iberia Bank"), states and alleges as follows:

### NATURE OF THE COMPLAINT

1.      Ms. White brings a cause of action under federal law, specifically the Fair Labor Standards act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2.      Ms. White brings this action against Defendant for unpaid overtime compensation, working "off-the-clock," and related penalties and damages.

3.      Ms. White is a former employee of Defendant who alleges that Defendant failed and refused to pay her the statutory required overtime premium for all hours worked over forty (40) in a designated work week.  Defendant required that Ms. White work off the clock during her lunch break and before and/or after hours.

4.      Ms. White further alleges that Defendant retaliated against her for reporting violations of the FLSA by when she insisted on payment for time spent working off-the-clock

1

and for reporting violations of the FLSA when she insisted that her time sheets be amended to reflect the correct number of hours she worked in a given workweek. Plaintiff asserts these actions were taken against her in violation of the FLSA's anti-retaliation provision.

5.     Defendant's practices are in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*. Plaintiff seeks declaratory relief, overtime premiums for all hours worked over forty (40) in any given workweek required, suffered, or permitted by Defendants and wages for all hours worked and not compensated ("off the clock" hours), liquidated, compensatory, and/or other damages as permitted by applicable law; attorneys' fees, costs, and expenses incurred in this action.

6.     Defendant's practice and policy is and has been, during Plaintiff's entire tenure with Defendant to willfully fail and refuse to pay an overtime premium due and owing to Plaintiff in violation of the FLSA, to willfully fail to compensate Plaintiff for all hours worked while employed by Defendant, and to willfully retaliate against Plaintiff for engaging in activity protected under the FLSA's anti-retaliation provision while employed by Defendant, in violation of the FLSA.

7.     Defendant institutes and carries out an unlawful policy and practice of refusing to pay Plaintiff for all time worked and refusing to pay her overtime for all hours worked in any given workweek over forty (40), notwithstanding the fact that she is a non-exempt employee entitled to an overtime premium under the FLSA.

## JURISDICTION AND VENUE

8.     This action for damages is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

9.     This Court has original federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 216(b) and 217.

10.     Defendant is a legal entity and has sufficient minimum contacts with the State of Tennessee such that it is subject to service of process in Tennessee. Therefore, this court has personal jurisdiction over Defendant.

11.     Defendant does business in the Western Division of Tennessee. Furthermore, a substantial part of events giving rise to Plaintiff's claims occurred in the Western District of Tennessee. Thus, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

12.     Plaintiff Carolyn White is an adult resident of Trenton, Gibson County, Tennessee.

13.     Plaintiff was an employee of Defendant for FLSA purposes.

14.     Defendant Iberia Bank is a banking institution with several branches located throughout the Mid-South region, including the Wolf River branch, located at 7860 Wolf River Boulevard, Germantown, Tennessee 38138, where Plaintiff worked. Defendant Iberia Bank is a Louisiana corporation, with its principal place of business at 200 West Congress Street, Lafayette, Louisiana 70501. Defendant is registered to do business in the State of Tennessee, and may be served with process through its Registered Agent, CT Corporation System, at 300 Montvue Road, Knoxville, Tennessee 37919.  At all relevant times, Defendant Iberia Bank was Plaintiff's employer under 29 U.S.C. § 203(e)(1).

## FACTUAL BACKGROUND

15.     Plaintiff Ms. White was an employee of Defendants for all relevant time periods for FLSA purposes as defined in 29 U.S.C. § 203(e)(1).

16.     Defendant operates an Iberia Bank branch at 7860 Wolf River Boulevard in Germantown, Tennessee, 38138.

17.     At all relevant times herein, Defendant was an employer under 29 U.S.C. §203(d).

18.     Plaintiff was paid on an hourly rate basis.

19.     Plaintiff was paid approximately $16.82 per hour.

20.     Defendant employed Plaintiff from approximately 2012 until she was constructively discharged on or about July 2, 2018.

21.     Defendant failed and refused to pay Plaintiff for all hours worked.

22.     Defendant failed and refused to pay Plaintiff for work performed before she clocked in at the start of her regularly scheduled shift, in any given work week.

23.     Defendant knew or should have known that Plaintiff was performing work before she clocked in at the start of her regularly scheduled shift for Defendant's benefit.

24.     Plaintiff worked off the clock multiple times in any given workweek.

25.     Defendant failed to compensate Plaintiff for all compensable time she worked at Defendant's facility.

26.     Plaintiff's position reported to the Branch Manager and Assistant Branch Manager.

27.     The Branch Managers and Assistant Branch Managers reported to the Regional Manager.

28.     Plaintiff began working under Mr. Maurice Butler in or about 2012.

29.     Mr. Butler was the Senior Regional Manager for Iberia Bank.

30.     Mr. Butler oversaw several Iberia Bank branches, including the Wolf River branch where Plaintiff worked.

31.     Part of Plaintiff's duties as a Universal Banker working at Iberia Bank's Wolf River branch included opening the branch each day.

32.     On information and belief, Defendant's protocols required a minimum of two employees to be present when the branch was opened.

33.     One employee would enter the premises and conduct a safety check to ensure no one had broken in during the night, and that no one was lying in wait to ambush an employee in order to commit a robbery.

34.     The employee responsible for conducting the safety check would also start up the computers to enable other employees to clock in upon their arrival.

35.     The second employee would wait outside the branch for the employee conducting the safety check to give the "all clear" signal which would permit the second employee to enter the building.

36.     Plaintiff would arrive early or on time, at approximately 8:00 a.m. to meet her counterpart in order to open the bank and conduct the safety check.

37.     However, the second employee assigned to open the branch was frequently late, and Plaintiff often had to wait up to twenty-five (25) minutes before she could enter the bank, let alone conduct the safety check and start the computer systems before clocking in for the day.

38.     Plaintiff often reported to her managers that she should be paid for waiting on the second employee to arrive to open the branch.

39.     Plaintiff reported to her managers that her time cards did not reflect an accurate number of hours she was working in any given workweek.

40.     Plaintiff was typically left waiting for another employee to arrive four (4) days out of every five-day workweek.

41.     When Plaintiff would complain that her hours were not accurately reflected, she was met with managers who varied in their willingness to make corrections to her time card.

42.     When Plaintiff would complain to her Branch Manager or Assistant Branch Manager that her time sheet did not accurately reflect the total number of hours she worked in a given workweek, Defendant knew or should have known that Plaintiff was performing work outside of regular business hours.

43.     Mr. Butler served as interim Branch Manager for Defendant's Wolf River branch, and subsequently received some of Ms. White's complaints concerning the inaccuracies of her time card.

44.     Additionally, in his capacity as Regional Branch Manager, Mr. Butler would carefully review time cards for employees in his region each week.

45.     Therefore, Mr. Butler knew that Ms. White had complained her time cards were inaccurate and requested her hours be corrected, as her time cards would show she worked forty (40) hours or more in a given workweek.

46.     Mr. Butler would get upset or even angry when an employee had overtime.

47.     Mr. Butler would communicate his displeasure at having to pay employees for their overtime hours to the branch managers, who would then advise hourly employees to avoid accruing overtime if at all possible.

48.     In one specific instance in or about the summer of 2014, Ms. Heather Boyd-Griffin, the assistant branch manager, issued a verbal warning to Ms. White stating that Ms. White would receive a written warning or further discipline if she accrued overtime hours.

49.     Plaintiff repeatedly made complaints that her time sheet was inaccurate.

50.     Plaintiff repeatedly complained to her managers, when she requested payment for work performed for Iberia Bank.

51.     Defendant retaliated against Plaintiff by issuing her unwarranted disciplinary actions over the period of 2015 until her constructive discharge on or about July 2, 2018.

52.     Defendant issued Plaintiff approximately three (3) disciplinary actions between 2015 and July 2, 2018.

53.     On information and belief, Mr. Maurice Butler, Defendant's Regional Manager, drafted these disciplinary actions to reprimand Plaintiff for events that either did not occur as described, or were not in violation of Defendant's policies and procedures.

54.     In one particular instance, Ms. Stacy Ferrente, the Wolf River Branch Manager, issued a disciplinary action to Plaintiff for allegedly improperly processing a payment received through the mail.

55.     Plaintiff asserts she took all steps necessary to vet the payment and the account, in compliance with Defendant's policies and procedures.

56.     Ms. Ferrente stated to Plaintiff that "[she] would have done the same thing.," when she presented Ms. White with the formal disciplinary action.

57.     Plaintiff was not responsible for determining pay rate and hours for Defendant's employees.

58.     Plaintiff was not responsible for evaluating Defendant's employees' productivity and job performance for raises or promotions.

59.     Plaintiff did not maintain the company's production or sales records to use in supervision or control of Defendant's employees.

60.     Plaintiff was not able to discipline Defendant's employees.

61.     Plaintiff was not in charge of resolving employee complaints.

62.     Plaintiff was not responsible for deciding what kind of materials, products, supplies, machinery, or tools would be bought and used by Defendant.

63.     Plaintiff did not control the flow and distribution of said materials.

64.     Plaintiff was not responsible for the safety of the employees and/or property of Defendant.

65.     Plaintiff was a non-exempt employee for all relevant time periods herein.

66.     Defendant told Plaintiff which work assignments to complete, when they had to be completed, and how the work should be performed.

67.     Defendant had the power to hire and fire Plaintiff.

68.     Defendant controlled the number of hours Plaintiff worked, the rate, and the method of her payment.

69.     Plaintiff was constructively discharged from her employment with Defendant on or about July 2, 2018.

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT – FAILURE TO PAY OVERTIME

70.     Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 69 as if fully set forth herein.

71.     Upon information and belief, at all relevant times, Defendant has been, and continues to be, an "employer" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

72.     Upon information and belief, at all relevant times, Defendant employed "employee[s]," including Plaintiff.

73.    Upon information and belief, at all relevant times, Defendant had gross operating revenues in excess of $500,000.00 (Five Hundred Thousand Dollars).

74.    The FLSA requires each covered employer, such as Defendant, to compensate all non-exempt employees for all hours worked at an hourly rate and compensate all non-exempt employees at a rate of not less than one and one-half the regular rate of pay for work performed in excess of forty hours in a work week.

75.    Defendant failed to pay Plaintiff for off the clock hours worked, including before the start of her regularly scheduled shift.

76.    As a result, Defendant failed to pay Plaintiff overtime premium for all hours worked in a given workweek.

77.    Defendants regularly suffered or permitted Plaintiff to perform compensable work integral and indispensable to principal activities before she clocked in at the start of the work day.

78.    Plaintiff is entitled to be paid compensation for all hours worked and is entitled to be paid for all compensable work Defendants suffered or permitted Plaintiff to perform before she clocked in at the start of the work day.

79.    Defendant knew or should have known that compensable work was being performed off the clock because Plaintiff complained to her Branch Managers and Assistant Branch Managers repeatedly that the time she spent performing tasks for the benefit of Defendant's business were not counted towards the total number of hours worked in a given work week.

80.    Further, Defendant knew or should have known that Ms. White was performing work off the clock because Iberia Bank's policies and procedures required off the clock work.

81.     As a result of Defendant's failure to compensate Plaintiff for all hours worked, Defendant violated the FLSA, including 29 U.S.C. § 207(a)(1) and § 206(a).

82.     Defendants' failure to compensate Plaintiff properly under the FLSA was not a good faith violation of the FLSA under 29 U.S.C. § 260.

83.     Further, by failing to accurately record, report, and/or preserve records of hours worked by employees, Defendant has failed to make, keep, and preserve records with respect to its employees sufficient to determine wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*

84.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) as Defendant knew, or showed reckless disregard for the fact that its compensation practices were in violation of the law.

## COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT - RETALIATION

85.     Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 84 as if fully set forth herein.

86.     During her employment with Defendant, Plaintiff engaged in protected activity under the FLSA.

87.     Specifically, Plaintiff complained to her immediate supervisors that Defendant suffered or permitted her to perform compensable work before she clocked in at the start of the work day, and the time she spent performing such work for the benefit of Defendant's business were not counted towards the total number of hours worked in a given work week.

88.     Plaintiff made these complaints to her Branch Managers and Assistant Branch Managers, individuals immediately over her in the chain of supervisory authority.

89.     When Plaintiff engaged in this conduct, she caused a complaint to be instituted under the FLSA.

90.     Plaintiff was subjected to not less than three (3) disciplinary actions in the period of 2015 until her constructive discharge on or about July 2, 2018.

91.     Plaintiff was subjected to disciplinary actions for events that did not occur as described in the written disciplinary document, or were not in violation of Defendant's policies and procedures.

92.     Plaintiff was subjected to unwarranted disciplinary actions in retaliation for complaining that her time sheets did not accurately reflect all hours she worked in a given workweek, and for demanding that they be corrected.

93.     On or about July 2, 2018, Plaintiff was constructively discharged from her employment with Defendant.

94.     An employer retaliates against an employee when it seeks to discourage employees from engaging in their statutorily protected rights.

95.     Making complaints to one's employers about work performed not being reflected on one's timesheets, and demanding that they be corrected qualifies as protected activity under the FLSA.

96.     By subjecting Plaintiff to numerous unwarranted disciplinary actions, Defendant subjected Plaintiff to adverse employment actions.

97.     By constructively discharging Plaintiff, Defendant subjected Plaintiff to an adverse employment action.

98.     Defendant would not have subjected Plaintiff to these disciplinary actions or constructively discharged her if not for her complaints about its wage and hour violations under the FLSA.

99.     By subjecting Plaintiff to unwarranted disciplinary actions and constructively discharging her, Defendant sought to prevent Plaintiff from initiating a lawsuit or filing any formal complaint against Defendant.

100.    As a result of Plaintiff's protected activity, Defendants retaliated against Plaintiff in violation of 29 U.S.C. § 215(a)(3).

101.    Plaintiff sustained monetary and non-monetary damages as a result of Defendant's illegal conduct, and demand such legal and equitable relief as will effectuate the purposes of the FLSA, including but not limited to the following:

    a.   Back Pay;

    b.   Front Pay;

    c.   Compensatory damages;

    d.   Liquidated damages;

    e.   Appropriate affirmative action;

    f.   Accrual of back and front pay and fringe benefits; and

    g.   Any other relief that this Court deems just and equitable.

**COUNT III – VIOLATION OF THE TENNESSEE PUBLIC PROTECTION ACT, TENN. CODE ANN. 50-1-304 *et seq.***

102.    Plaintiff realleges and reincorporates the allegations contained in Paragraphs 1 through 101 as if fully set forth herein.

103.    Additionally, or alternatively, Defendant's actions towards Plaintiff constitute retaliation under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 et seq.

12

104.    Plaintiff complained that her time cards did not accurately reflect the number of hours she worked for Defendant, and requested that her managers correct them.

105.    Plaintiff reported Defendant's illegal activity of inaccurately reporting the time she spent performing work for Defendant, so as to avoid paying her for all hours worked in a given workweek, including hours worked over forty (40).

106.    In making this report, Plaintiff refused to remain silent about illegal activities

107.    Plaintiff's reports were investigated by her various managers, who sometimes made corrections to Plaintiff's time cards to account for all hours Plaintiff performed work for Defendant.

108.    Plaintiff made reports of inaccuracies on her time cards over the entire period of her employment with Defendant.

109.    As a result of her reports, Plaintiff was targeted for and issued unwarranted disciplinary actions by Defendant's Regional Manager, Mr. Butler.

110.    As a result of her reports and the subsequent targeting for unwarranted discipline, Plaintiff was constructively discharged from her employment with Defendant on or about July 2, 2018.

111.    Plaintiff's complaints about inaccurate hours on her time cards were the direct and proximate cause of Plaintiff's constructive discharge.

112.    As a result of Plaintiff's constructive discharge, Plaintiff has suffered economic damages, humiliation, embarrassment, degradation, emotional distress, and mental anguish.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays as follows:

1.      A declaratory judgment that the practices complained of herein are unlawful under the Fair Labor Standards Act;

2.      Pre-judgment and post-judgment interest, as provided by law,

3.      An award of money damages for unpaid wages, including liquidated damages, front pay, back pay, and compensatory damages, and penalties in an exact amount to be determined at trial;

4.      Costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees;

5.      That this matter be tried by a jury;

6.      Any and all such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: January  4 , 2019                            Respectfully submitted,


                                                    s/Bailey H. Dorsey

                                                    Alan G. Crone, TN Bar No. 014285
                                                    Laura Ann E. Bailey, TN Bar No. 27078
                                                    Bailey H. Dorsey, TN Bar No. 33664
                                                    THE CRONE LAW FIRM, PLC
                                                    88 Union Avenue, 14th Floor
                                                    Memphis, TN 38103
                                                    (901) 737.7740 (voice)
                                                    (901) 474.7926 (fax)
                                                    acrone@cronelawfirmplc.com
                                                    lbailey@cronelawfirmplc.com
                                                    bdorsey@cronelawfirmplc.com

                                                    *Attorneys for Plaintiffs*